UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| JANETH RUIZ, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CONAGRA FOODS, INC.,<br><br>Defendant. | Case No.<br><br><br>CLASS ACTION COMPLAINT<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff Janeth Ruiz, by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendant ConAgra Foods, Inc. ("ConAgra" or "Defendant"). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this class action on behalf of herself and a class of persons who purchased any of the following cooking oils sold under the Wesson brand name: Canola Oil, Vegetable Oil, Corn Oil, and Best Blend (collectively referred to herein as the "Products" or "Wesson Oils"). Wesson is a brand owned, developed, marketed, and sold by defendant ConAgra Foods, Inc.

2. ConAgra labels its Wesson Oils as "100% Natural." This representation is central to ConAgra's marketing of Wesson Oils, and is displayed prominently on the product label itself, the Wesson website, and all Wesson Oils' advertisements.

3. But Wesson Oils are not "100% natural." The oils are made from genetically modified plants ("GM") or genetically modified organisms ("GMO").

1

4. Monsanto Company, a global agricultural company that pioneered GM seeds, defines GMO on its website as food with "genetic makeup altered to exhibit traits that are not naturally theirs. In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism." Monsanto, http://www.monsanto.com/newsviews/Pages/glossary.aspx#g. As more fully alleged below, "unnatural" is a recognized defining characteristic of genetically modified foods.

5. The reasonable consumer assumes that "seeds created by swapping genetic material across species to exhibit traits not naturally theirs" are not "100% natural." Wesson Oils' advertising is very likely to deceive consumers.

6. Plaintiff was damaged, in an amount to be determined at trial, because she did not get the "100% natural" oil that was advertised and that she paid for.

7. Defendant's violations of Florida law and wrongful conduct designed to mislead and deceive consumers into purchasing its product by labeling it as natural when it is made up of GM ingredients, violate Florida's false advertising and unfair competition laws, and constitute a breach of express warranty.

## JURISDICTION AND VENUE

8. Original jurisdiction in this Court is proper pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and this is a class action in which members of the Plaintiff Class are citizens of a state different from Defendant.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to the alleged claims occurred in this district and because Defendant is authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution, and sale of their Products in this district; does substantial business in this district; and is subject to personal jurisdiction in this district.

## PARTIES

10. Plaintiff Janeth Ruiz resides in West Palm Beach, Florida. During the Class period, Plaintiff purchased one or more of the Products for personal use, suffered injury in fact, and lost money and property as a result of the unfair competition and unlawful, unfair and fraudulent business practices described herein.

11. Defendant is a Delaware corporation located in Omaha, Nebraska. ConAgra markets and sells the Products to consumers throughout the United States, including tens of thousands of consumers in Florida.

## DEFENDANT'S UNLAWFUL CONDUCT

12. ConAgra sells four types of widely used cooking and food preparation oils under the Wesson brand. All Wesson Oils are sold with a label on the front of the bottle that states prominently "100% Natural."

13. In addition to appearing on the product label, "100% Natural" appears on Wesson Oils online and print advertisements. For example, the Wesson website describes the four oils as follows:

(a) "Pure Wesson 100% Natural Canola Oil is the most versatile type of vegetable oil and it provides the best nutritional balance of all popular cooking oils."

(b) "Pure Wesson 100% Natural Oil is the perfect all-purpose cooking and baking vegetable oil."

(c) "Pure Wesson 100% Natural Corn Oil is the best oil to ensure a crispy coating on your fried foods while retaining moistness on the inside."

(d) "Pure Wesson 100% Natural Best Blend Oil is highly versatile. Wesson Best Blend Oil is a perfect combination of two great oils [Canola oil and Soybean oil] that makes it just right for everything from grilling and frying to salad dressings."

14. The "100% Natural" statement is, like much of the label on Wesson Oils, displayed in lively green. The "Wesson" name is haloed by the image of the sun, and the Canola Oil features a picture of a green heart. The Wesson Oils labels obviously are intended to evoke a natural, wholesome product.

15. The claim that Wesson Oils are "natural" is highly material to the average consumer, which is why ConAgra places "100% natural" on the front product label and Wesson Oils product advertisements.

16. Wesson Oils are derived from plants grown from GMO seeds that are engineered to, among other things, allow for greater yield and to be resistant to pesticides.

17. ConAgra, on the Conagra.com corporate site (but not on the Wesson site that consumers are more likely to visit), at the end of a pro-biotechnology piece, indirectly acknowledges that its Wesson Oils are genetically engineered. The page that displays this information requires numerous clicks to reach.

18. Although ConAgra nobly says that "consumers will decide what is acceptable in the marketplace," ConAgra's Wesson Oils' advertising robs consumers of the ability to make an informed decision because they are told that Wesson Oils are "100% Natural." Further, reasonable consumers told that Wesson Oils are "100% Natural" have no reason to "demand products without biotechnology ingredients"—the "natural" designation represents to consumers that they are getting biotech-free food.

19. Monsanto Company is one of the world's biggest sellers of GMO seeds and an avid GMO-proponent. On its website, Monsanto defines GMO as follows:

> Genetically Modified Organisms (GMO) – Plants or animals that have had their genetic makeup altered to exhibit traits that are not naturally theirs. In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism. Monsanto, http://www.monsanto.com/newsviews/Pages/glossary.aspx#.

20. The World Health Organization ("WHO"), which is the United Nations' directing and coordinating authority for health, defines GMO as follows:

> Genetically modified organisms (GMOs) can be defined as organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally. The technology is often called "modern biotechnology" or "gene technology", sometimes also "recombinant DNA technology" or "genetic engineering". It allows selected individual genes to be transferred from one organism into another, also between non-related species. Such methods

4

are used to create GM plants—which are then used to grow GM food crops. WHO, http://www.who.int/foodsafety/publications/biotech/20questions/en/.

21. Romer Labs, a company that provides diagnostic solutions to the agricultural industry, defines GMO as follows:

> Agriculturally important plants are often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to express novel traits that normally would not appear in nature, such as herbicide or insect resistance. Seed harvested from GMO plants will also contain these modification. Romer Labs, http://www.romerlabs.com/en/analytes/genetically-modifiedorganisms.

22. As demonstrated by the above definitions, genetically modified organisms are "created" artificially in a laboratory through genetic engineering. ConAgra's Wesson Oils are not natural, much less "100% Natural." Advertising Wesson Oils as natural is deceptive and likely to mislead the public.

## CLASS ALLEGATIONS

23. Plaintiff brings this action on behalf of herself and all similarly situated Florida consumers pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). The Class of persons whom Plaintiff seeks to represent is defined as:

All persons in Florida who, within the applicable statute of limitations, purchased Wesson Oils (the "Class" or "Class members"). Excluded from the Class are the Defendant, any parent, subsidiary or affiliate of the Defendant, any entity in which the Defendant has a controlling interest, and the respective officers, directors, employees, agents, legal representatives, heirs, predecessors, successors, and assigns of such excluded persons or entities.

24. Plaintiff and the members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impracticable.

25. There are questions of law and fact common to the Class.

26. Plaintiff's claims are typical of the claims of the members of the Class. The named Plaintiff is a member of the Class of victims described herein.

27. The named Plaintiff is willing and prepared to serve the Court and the proposed Class in a representative capacity with all of the obligations and duties material thereto. Plaintiff will

fairly and adequately protect the interests of the Class and has no interests adverse to or which directly and irrevocably conflicts with the interests of other members of the Class.

28.   The self interests of the named Class representative are co-extensive with, and not antagonistic to, those of the absent Class members. The proposed representative will undertake to represent and protect the interests of the absent Class members.

29.   The named Plaintiff has engaged the services of counsel indicated below. Counsel are experienced in complex class-action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise will represent the named Class representative and absent Class members.

30.   This action is appropriate as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

31.   This action involves questions of law and fact common to Plaintiff and all members of the Class. These common questions predominate over any issues affecting individual members of the Class and include:

- whether Defendant engaged in an unlawful, unfair, misleading or deceptive business act or practice through their labeling and advertising practices;

- whether Defendant falsely represented that its Product as "100% Natural";

- whether Defendant knew that their Product was not "100% Natural";

- whether Plaintiff and Class members are entitled to injunctive relief enjoining Defendant from continuing to advertise their Product as "100% Natural";

- whether Defendant should be made to engage in a corrective advertising campaign; and

- whether Plaintiff and Class Members have been harmed and the proper measure of relief.

32.   Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than in piecemeal individual determinations.

33. There is no plain, speedy or adequate remedy other than by maintenance of this lawsuit as a class action because individual damages are relatively small, making it economically infeasible for Class members to pursue remedies individually. The prosecution of separate actions by individual members of the Class, even if theoretically possible, would create a risk of inconsistent or varying adjudications with respect to individual Class members against Defendant and would establish incompatible standards of conduct for Defendant.

34. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

- given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

- when Defendant's liability has been adjudicated, claims of all Class members can be determined by the Court;

- this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

- without a class action, many Class members would continue to suffer injury, and Defendant's violations of law will continue without redress while Defendant continues to reap and retain the substantial proceeds of their wrongful conduct.

35. Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

36. Defendant has acted on grounds applicable to the Class generally; therefore, Plaintiff seeks equitable and injunctive relief on behalf of the entire Class on grounds generally applicable to the entire Class.

## COUNT I

### For Violations of Florida's Deceptive
### and Unfair Trade Practices Act,
### Fla. Stat. 501.201 *et seq.*

37. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

38. Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

39. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that Defendant's Product as "100% Natural".

40. Plaintiff and Class members relied upon these statements in deciding to purchase the Product. Plaintiff's reliance was reasonable because of Defendant's reputation as reliable company.

41. Had Plaintiff known that the Products were made from GMOs, she would not have purchased them.

42. As a result of Defendant's deceptive and unfair acts, Plaintiff and Class members have been damaged in the amount paid for the Product.

43. Defendant's conduct offends established public policy, and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

44. Plaintiff and Class members are entitled to damages in an amount to be proven at trial, but not less than the amount paid for Defendant's Product.

45. Defendant should also be ordered to cease its deceptive advertising, and should be made to engage in a corrective advertising campaign, to inform consumers that their Products are from GMOs.

## COUNT II

### For False and Misleading Advertising, Fla. Stat. § 817.41

46. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

47. On their website, on product labels, in print advertisements, and in other forms of advertisements, Defendant made numerous misrepresentations of material fact that its Products were 100% Natural.

48. Defendant knew that these statements were false.

49. Defendant made these statements for the purpose of selling property, and intended that consumers rely upon them in purchasing its Products.

50. Plaintiff and Class members did in fact rely upon these statements in the Products. Reliance was reasonable and justified because of Defendant's reputation as a reliable company.

51. As a result of Defendant's misrepresentations, Plaintiff and Class members suffered damages in the amount paid for the Products.

52. Plaintiff and Class members are entitled to damages and injunctive relief as set forth in above.

## COUNT III

### Unjust Enrichment

53. Plaintiff incorporates by reference each of the preceding allegations as though fully set forth herein.

54. Plaintiff and Class members conferred a benefit on Defendant by purchasing the Products at a premium price.

55. Defendant received the moneys paid by Plaintiff and Class members and thus knew of the benefit conferred upon them.

56. Defendant accepted and retained the benefit in the amount of the profits they earned from sales of the Product to Plaintiff and Class members.

57. Defendant has profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

58. Plaintiff does not have an adequate remedy at law against Defendant.

59. Plaintiff and Class members are entitled to restitution of the excess amount paid for the Product and disgorgement of the profits Defendant derived from sales of the Products.

## COUNT IV

### Breach of Express Warranty

60. Plaintiff incorporates by reference each of the preceding allegations as though fully set forth herein.

61. Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other Class Members purchased Wesson Oils. The terms of that contract include the promises and affirmations of fact made by Defendant on Wesson Oils' packaging and through marketing and advertising, as described above. This marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

62. Defendant purports through its advertising to create express warranties of Wesson Oils as natural by making the affirmation of fact, and promising, that Wesson Oils are "100% Natural."

63. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class, when they purchased the product and used it as directed.

64. Despite express warranties about the "100% Natural" nature of Wesson Oils, Wesson Oils are composed of GMOs and are, in fact, not as they are found in nature.

65. Defendant breached express warranties about Wesson Oils and their qualities, because the product does not conform to Defendant's affirmations and promises to be natural and provide such benefits described above.

66. As a result of Defendant's breach of express warranty, Plaintiff and the Class were harmed in the amount of the purchase price of Wesson Oils.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

    A.    Certify this action as a class action;

    B.    Award compensatory and punitive damages as to all Counts where such relief is permitted;

    C.    Enjoin Defendant's conduct and order Defendant to engage in a corrective advertising and labeling/disclosure campaign;

    D.    Award equitable monetary relief, including restitution;

    E.    Award pre-judgment and post-judgment interest at the legal rate;

    F.    Award Plaintiff and Class members the costs of this action, including reasonable attorneys' fees and expenses; and

    G.    Award such other and further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATED:  July 27, 2011                             s/WILLIAM C. WRIGHT

                                                    THE WRIGHT LAW OFFICE, P.A.
                                                    FL BAR NO. 138861
                                                    301 Clematis Street, Suite 3000
                                                    West Palm Beach, FL 33410
                                                    Telephone: (561) 514-0904
                                                    Facsimile:  (561) 514-0905
                                                    willwright@wrightlawoffice.com


                                                    *Attorneys for Plaintiff*